IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

JERRY MANZANARES,

       **Plaintiff,**

vs.                                                                                     Civ. No. 01-1285 WWD

**JO ANNE B. BARNHART,**
**Commissioner of Social Security,**

       **Defendant.**

## MEMORANDUM OPINION AND ORDER

    1.   This matter comes before the Court upon Plaintiff's Motion to Reverse or Remand for Administrative Decision ("Motion"), filed August 5, 2002 **[Doc. 9]**.  Plaintiff seeks judicial review of the final decision of the Commissioner of Social Security denying the Plaintiff's applications for social security disability insurance benefits ("SSD") and supplemental security income benefits ("SSI").[1]  Plaintiff alleges a disability which commenced July 25, 2000 due to back injuries, severe pain, gout of his right foot and hand, knee injury and arthritis of his knees and joints.  Tr. at 49. Plaintiff also claims that he has a loss of hearing.  Tr. at 76.

    2.   Plaintiff applied for benefits on August 4, 2000.  Tr. at 41, 156 .  After conducting an administrative hearing, the Commissioner's Administrative Law Judge ("ALJ") issued a decision on June 1, 2001 denying Plaintiff's applications.  Tr. at 7-14.

    3.   The ALJ concluded that Plaintiff retained the residual functional capacity ("RFC") to

---

    [1] Plaintiff initially sought review of the Commissioner's decision denying his applications for both Social Security Disability ("SSD") and Supplemental Security Income ("SSI") benefits.  See Untitled Document ("Complaint"), filed November 13, 2001 **[Doc. 1]**.  However, Plaintiff explains that "[t]his case is centered upon Plaintiff's . . . claim for [SSD] benefits."  Pl.'s Reply at 1, filed Aug. 21, 2002 **[Doc. 13]**; see also Pl.'s Mem. in Support of Mot. at 1, filed Aug. 5, 2002 **[Doc. 10]** (addressing only Plaintiff's claim for SSD benefits).

perform light work and is not disabled because "[t]here exist other jobs in significant numbers that the claimant can perform." Tr. at 13-14. The Appeals Council denied Plaintiff's request for review, thus rendering the ALJ's decision the final decision of the Commissioner. Tr. at 4. Plaintiff now seeks review of that final decision pursuant to 42 U.S.C. §405(g).

4. Plaintiff's date of birth is April 22, 1949. Tr. at 41. Plaintiff has completed one year of college and has worked in the past as a driller, welder, operator (timber company), custodian, carpenter and yard keeper. Tr. at 50, 55.

5. The standard of review in social security appeals is whether the Commissioner's final decision, in this case the ALJ's decision, is supported by substantial evidence. Thompson v. Sullivan, 987 F.2d 1482 (10th Cir. 1993) (citations omitted). Additionally, the Commissioner's final decision can be reversed if the ALJ failed to apply the correct legal tests. Id. (citation omitted).

6. Plaintiff raises the following allegations of error with respect to the ALJ's decision: (1) The ALJ erred in substituting his opinion for those of medical providers, (2) The ALJ failed to develop the record, (3) The ALJ failed to consider the side effects of Plaintiff's medications, (4) The ALJ erred in failing to follow the special technique evaluation for mental severity, and (5) The ALJ erred in mechanically applying the medical-vocational guidelines ("grids"). Pl.'s Mem. in Support of Mot. at 2. Plaintiff seeks an order remanding this matter with instructions to award benefits.

7. "To qualify for disability benefits, a claimant must establish a severe physical or mental impairment expected to result in death or last for a continuous period of twelve months which prevents the claimant from engaging in substantial gainful activity." Thompson, 987 F.2d at 1486

(citing 42 U.S.C. §423 (d)(1)(A)); see also 42 U.S.C. § 1382c(a)(3)(A).  Social Security Regulations require the Commissioner to evaluate five factors in a specific sequence in analyzing disability applications.  Id.; see 20 C.F.R. §§ 404.1520(a - f); 416.920.  The sequential evaluation process ends if at any step the Commissioner finds that the claimant is disabled or not disabled. Id. (citations omitted).

8.  At the first four levels of the evaluation, the claimant must show:  (1) that he or she is not working; (2) that he or she has an impairment or combination of impairments severe enough to limit the ability to do basic work activities; (3) that the impairment meets or equals one of the listing of impairments in 20 C.F.R. Pt. 404, Subpt.P, App.1; or (4) that he or she is unable to perform work done in the past.  At step five, the burden shifts to the Commissioner to show that the claimant has a residual functional capacity ("RFC") to do work in the national economy other than  past relevant work.  Thompson, 987 F.2d at 1487 (citations omitted).

9.  At step two of the sequential evaluation, the ALJ found that Plaintiff has severe impairments "consisting of lumbosacral strain, osteoarthritis, and history of gout, that limit[] him to the performance of only light work."  Tr. at 11.  At step five, the ALJ applied the Grids and concluded that Plaintiff was not disabled because "[t]here exist other jobs in significant numbers that the claimant can perform."  Tr. at 14.

*First and Fourth Alleged Errors*

10.  Plaintiff alleges that the ALJ improperly concluded that:  (1) Plaintiff's hearing impairment "is treatable by use of hearing aides," tr. at 11, (2) "conservative treatment . . . . proved successful" in treating Plaintiff's headaches "in that [Plaintiff] did not require treatment for this impairment beyond 1998," id., and (3) Plaintiff's probable depression is not severe because

3

"the [prescribed] medication can be expected to fully alleviate the claimant's depressive symptoms," tr. at 11-12.  Plaintiff contends that these conclusions are based on speculation and conjecture and are not supported by the medical evidence.  The ALJ reached these conclusions while evaluating the severity of Plaintiff's impairments at step two of the sequential process.

*Hearing Impairment*

11.  Based on an audiology report of April 11, 2001, tr. at 134, the ALJ found that Plaintiff's history of tinnitus with hearing loss is not severe because it is "treatable by use of hearing aides," tr. at 11.  Plaintiff contends that no opinion in the record states that his hearing impairment is treatable with hearing aids.  Defendant responds that the audiology report provides support for the ALJ's finding that Plaintiff's hearing impairment is treatable.

12.  The April 2001 audiology report recommended that Plaintiff contact the Division of Voc[ational] Rehab[ilation] for assistance in obtaining hearing aids.  Tr. at 134.  From this recommendation, the ALJ could reasonably infer that Plaintiff's hearing impairment is, to some extent, treatable.  Thus, I do not find that the ALJ improperly substituted his opinion for that of a medical provider in reaching this conclusion.  However, a conclusion that Plaintiff's condition is treatable, falls short of finding that Plaintiff's condition will not significantly limit his capacity to perform basic work-related functions.  Moreover, I do not agree with Defendant's apparent assertion that the ALJ's finding that Plaintiff's hearing impairment is "treatable," is equivalent to a finding that the impairment can be "reasonably regulated."[2]  See Def.'s Resp. at 4, filed Aug. 9,

---

[2] Defendant cites Luna v. Bowen, 834 F.2d 161 (10th Cir. 1987) in support of the proposition that "[c]onditions that can be reasonably regulated cannot constitute a basis for disability."  Def.'s Resp. at 4.  However, Luna discusses the evaluation of a claimant's allegations of pain; it does not address the principle cited by Defendant.

2002 **[Doc. 11]**.  Thus, the ALJ's determination that Plaintiff's hearing impairment is "treatable," without more, does not support a conclusion that Plaintiff's impairment is not severe.

      13.  The Plaintiff may have failed to carry his burden of proving that he has a severe hearing impairment.  However, this Court will not affirm the ALJ's decision on findings or reasons not provided by the ALJ.  See  Knipe v. Heckler,  755 F.2d 141, 149 n.16 (10th Cir. 1985) (citing Dong Sik Kwon v. INS, 646 F.2d 909, 916 (5th Cir.1981) (en banc) (in reviewing order of Board of Immigration Appeals, court is not permitted to consider reasons not advanced by Board)).  Here, the ALJ made no explicit findings regarding the impact of Plaintiff's hearing impairment, treated or not, on the Plaintiff's ability to perform work-related activities.  See Dukes v. Apfel, 156 F.3d 1243, 1998 WL 476770, at **3 (10th Cir. Aug. 11,1998) (unpublished table decision) (citations omitted) (noting that the ALJ should make detailed findings at steps two and three).  Because substantial evidence does not support the ALJ's conclusion with respect to Plaintiff's hearing impairment, this matter should be remanded for additional proceedings, including further development of the record as needed.

    *Headaches*

    14.  At step two, the ALJ found that Plaintiff's headaches were not a severe impairment because "conservative treatment . . . . proved successful in that [Plaintiff] did not require treatment . . . beyond 1998."  Tr. at 11.  While the evidence indicates that Plaintiff did not receive specific treatment for his headaches beyond 1998, the medical records contain reports of headaches beyond 1998.  See, e.g., tr. at 109 (Aug. 30, 2000: "[h]eadaches when pain gets real bad"); tr. at 123 (Aug. 7, 2000: "headaches daily since Tuesday"); tr. at 126 (Nov. 9, 2000: "daily headaches").  Despite this evidence, the ALJ did not question the Plaintiff regarding his

5

headaches. Nor did the ALJ make specific findings regarding the impact of Plaintiff's headaches on his capacity to perform work-related activities. On remand, the ALJ should develop the record as needed and make explicit findings with respect to Plaintiff's allegations of headaches.

*Mental Impairment*

15. At step two, the ALJ made the following findings with respect to Plaintiff's alleged mental impairment: (1) "medication was not prescribed [for anxiety and depression] for the years 1998-2000," (2) on January 15, 2001, "medication was prescribed [for probable depression], and this sign did not prevent the physician from describing [Plaintiff] as at maximum medical improvement ["MMI"], and (3) "hospitalization, outpatient treatment, group therapy or other forms of treatment were not recommended/advised." Tr. at 11-12. Based on these findings, the ALJ concluded that Plaintiff's depressive symptoms were not severe because "the medication can be expected to fully alleviate [Plaintiff's] depressive symptoms." Tr. at 12.

16. Plaintiff contends that no medical evidence supports the ALJ's conclusion that medication can be expected to fully alleviate Plaintiff's depressive symptoms. Defendant, apparently conceding this point, argues that "[m]edical treatment does not need to fully alleviate [Plaintiff's] depressive symptoms, but [only] make such symptoms tolerable." Def.'s Resp. at 4. As previously noted, this Court will not affirm the ALJ's decision on reasons not provided by the ALJ. In any event, the findings listed by the ALJ fail to provide substantial support for a conclusion that medication either fully alleviates Plaintiff's symptoms or renders those symptoms tolerable. Nor do I find the Commissioner's *post hoc* reasoning persuasive.[3]

---

[3] For example, the Commissioner points out that on November 9, 2000, Dr. Caldwell reported that "[a]mitriptyline has helped." Tr. at 125. However, this statement apparently describes the medication's effect on Plaintiff's pain and/or sleeping problem, not Plaintiff's

17. The ALJ's finding that medication was not prescribed from 1998 to 2000 may be evidence that Plaintiff's mental condition was not severe during this time; however, it does not logically support an inference that medication will alleviate depressive symptoms. The relevance of this finding is further diminished, given that the Plaintiff's alleged onset of disability was July 25, 2000. The mere fact that medication was prescribed on January 15, 2001, or that other forms of treatment were not prescribed, does not provide substantial support for the conclusion that medication would fully alleviate Plaintiff's depressive symptoms.

18. At step two, the issue is whether Plaintiff's impairment significantly limits his capacity to perform work-related activities. However, the ALJ made no explicit findings regarding the impact of Plaintiff's mental impairment on the Plaintiff's ability to perform work-related activities. As previously stated, the ALJ's reasoning fails to provide substantial support for the conclusion that medication would fully alleviate Plaintiff's depressive symptoms. Thus, the ALJ's finding regarding the effectiveness of Plaintiff's medication cannot support a determination that Plaintiff's mental impairment is not severe. See Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992) (noting that evidence is not substantial if it constitutes mere conclusion). Accordingly, this matter should be remanded for further proceedings at step two with respect to evaluation of Plaintiff's alleged mental impairment.

*Evaluating Mental Impairments*

19. When there is evidence of a mental impairment that allegedly prevents a claimant from working, the Commissioner must follow a special procedure for evaluation of mental impairments

---

depressive symptoms. See id. Indeed, Dr. Caldwell indicated that Plaintiff had no past psychiatric history. See id.

7

set forth in 20 C.F.R. § 404.1520a.  See Cruse v. U.S. Dep't of Health & Hum. Servs., 49 F.3d 614, 617 (10th 1995); see also Andrade v. Sec'y of Health & Hum. Servs., 985 F.2d 1045, 1048-49 (10th Cir. 1993) (citing Hill v. Sullivan, 924 F.2d 972, 974 (10th Cir. 1991).  The procedure requires first a careful review of the case record to determine if a mental impairment exists.  Andrade, 985 F.2d at 1048-49; 20 C.F.R. § 404.1520a(b)(1);  Cruse, 49 F.3d at 617.  The ALJ must then  "record the pertinent signs, symptoms, findings, functional limitations, and effects of treatment contained in [the] . . case record." § 404.1520a(b)(1).  Findings relevant to work are then put on a standard document called a Psychiatric Review Technique ("PRT") Form.  Andrade at 1049, Cruse, 49 F.3d at 617.

    20.  Here, the record contains enough evidence of a mental impairment to trigger the special procedure for evaluating a mental impairment.  As early as October of 1997, Dr. Elliott diagnosed Plaintiff with anxiety and depression and prescribed amitriptyline, an antidepressant medication.  Tr. at 145.  The record also indicates that Plaintiff was taking Elavil (amitriptyline) in September of 2000.  Tr. at 121.  On January 15, 2001, Dr. Elliott diagnosed Plaintiff as having "[p]robable depression with functional complaints," and increased Plaintiff's amitriptyline dosage. Tr. at 147.

    21.  However, despite this evidence, the ALJ did not complete and attach a PRT Form to his decision.  Because this procedure was not followed, the Court is unable to determine if substantial evidence supports the ALJ's decision.  Moreover, "the ALJ's duty to develop the record may have been heightened because there was no PRT in the record."  Sanchez v. Apfel, 210 F.3d 390, 2000 WL 376616, at **3 (10th Cir. Apr. 13, 2000) (unpublished table decision); see also Robertson v. Chater, 900 F.Supp. 1520 (D.Kan. 1995) (citing Carter v. Chater, 73 F.3d

1019, 1022 (10th Cir.1996)) (noting that a diagnosis of major depression triggered the ALJ's duty to further develop the record concerning that impairment).

22. For all of these reasons, the Court must remand this case for proper and full consideration of Plaintiff's mental impairment singularly and in combination with his physical impairments. At a minimum, the evaluation of Plaintiff's mental impairment on remand should include the completion of a PRT. Moreover, if "additional tests are required to explain a diagnosis already contained in the record, resort to a consultative examination may be necessary." Sanchez, 2000 WL 376616, at **2; see also Robertson, 900 F.Supp. at 1530 (finding "a serious issue whether the ALJ can make an informed decision about [plaintiff's] mental impairment without a consultative psychological examination"). Thus, in addition to completing a PRT, the Commissioner may find it necessary to obtain a consultative examination.

### *Third and Fifth Alleged Errors*

*Side Effects of Plaintiff's Medication*

23. Plaintiff correctly points out that the ALJ's decision did not address the evidence regarding the side effects of his medication. "The court believes that the ALJ needs to consider these side effects to properly consider plaintiff's ability to perform substantial gainful activity." Simmonds v. Massanari, 160 F.Supp.2d 1235, 1244 (D.Kan. 2001). Accordingly, on remand, the Commissioner is directed to evaluate the side effects of Plaintiff's medication.

*The ALJ's application of the grids at step five*

24. The ALJ determined that while Plaintiff was unable to perform his past relevant work, he was capable of performing light work. At step five, the ALJ applied the grids and concluded that "[t]here exist other jobs in significant numbers that the [Plaintiff] can perform." Tr. at 14.

Thus, the ALJ implicitly found that Plaintiff was capable of performing the full range of light work.  See Williams v. Bowen, 844 F.2d 748, 752 (10th Cir. 1988) (citations omitted) (noting that the grids are not applicable if the claimant's ability to perform the full range of work in a particular RFC is significantly limited).

25.  Plaintiff alleges that nonexertional limitations on his ability to stoop, bend and squat precluded the ALJ's use of the grids at step five.  Defendant contends that the ALJ properly relied on the grids, noting that in 1998, Plaintiff's medical restrictions applied only to repetitive stooping and bending.  The ALJ's decision contains no discussion of Plaintiff's alleged postural limitations or their impact on Plaintiff's ability to perform work activities.

26.  As noted, the grids cannot be applied conclusively if a claimant has nonexertional limitations that significantly limit his "ability to perform the full range of work in a particular RFC" category on a sustained basis.  Williams, 844 F.2d at 752; see also  Ragland v. Shalala, 992 F.2d 1056, 1058 (10th Cir.1993); Channel v. Heckler, 747 F.2d 577, 583 (10th Cir. 1984).  While the mere existence of a nonexertional impairment will not preclude reliance on the grids, application of the grids is not appropriate if the nonexertional impairment interferes with a claimant's ability to do work-related activities.  Thompson, 987 F.2d at 1488.

27.  Because this matter is remanded for additional proceedings, the ALJ should develop the record as necessary, evaluate Plaintiff's postural limitations, and make findings as to their impact on Plaintiff's ability to work.  On remand, the ALJ should also consider the impact of any new or changed findings arising from the evaluation of Plaintiff's hearing loss, headaches, mental impairment and medication side effects on the applicability of the grids at step five of the sequential process.  Finally, because this matter is remanded for additional proceedings, including

further development of the record, I do not find it necessary to specifically address Plaintiff's allegation that the ALJ failed to adequately develop the record.

WHEREFORE,

IT IS ORDERED that Plaintiff's Motion to Reverse or Remand for Administrative Decision **[Doc. 9]** is granted in part, and that this matter be remanded for additional proceedings consistent with this opinion, to include:

- (A) developing the record and making explicit findings with respect to Plaintiff's allegations of hearing loss and headaches;

- (B) developing the record and evaluating Plaintiff's mental impairment to include:

    (1) utilizing the special procedure required to evaluate a mental impairment,

    (2) completing a PRT, and

    (3) obtaining a consultative examination, if necessary;

- (C) evaluating the side effects of Plaintiff's medications;

- (D) developing the record as necessary, evaluating Plaintiff's postural limitations, and making findings as to their impact on Plaintiff's ability to work;

- (E) considering the impact of any new or changed findings arising from the evaluation of Plaintiff's hearing loss, headaches, mental impairment and medication side effects on the applicability of the grids at step five; and

- (F) any additional proceedings, as necessary.

_____
UNITED STATES MAGISTRATE JUDGE